IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WILLIAM F. PERKINS
in his capacity as Plan Trustee of
International Management Associates,
LLC, and its affiliated debtors,

   Plaintiff,

     v.

AMERICAN INTERNATIONAL
SPECIALTY LINES INSURANCE
CO., et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:12-CV-3001-TWT

ORDER

This is an insurance coverage dispute. It is before the Court on the Plaintiff's Objection to the Proposed Findings of Fact and Conclusions of Law Pursuant to 28 U.S.C. § 157(c)(1) Regarding Defendant AISLIC's Motions for Summary Judgment and Defendant AISLIC's Objection to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law [Doc. 1]. For the reasons set forth below, the Court DENIES the Plaintiff's Objection, DENIES AS MOOT the Defendant's Objection, GRANTS the Defendant's Motions for Summary Judgment, and DENIES AS MOOT the Defendant's Motions to Exclude and to Strike.

I.  Background

The plaintiff is William F. Perkins.  He is the Plan Trustee under the confirmed Chapter 11 plan of International Management Associates, LLC ("IMA"), and its affiliated debtors, all of whose cases have been substantively consolidated. The remaining defendant is American International Specialty Lines Insurance Company ("AISLIC"), which issued to IMA an investment management insurance policy, Policy No. 625-53-43 (the "Policy").  The Trustee claims that IMA is entitled to coverage under the Policy for legal liability arising from negligent investment, breaches of contract, and breaches of fiduciary duties. AISLIC denies liability on various grounds.

AISLIC issued a binder for investment management insurance coverage to IMA on January 5, 2006 and a policy on January 26. On February 17, 2006, investors in IMA, Steven Atwater and affiliated parties, filed a lawsuit in the Superior Court of Fulton County against IMA and some of its officers. Six days later, on February 23, 2006, investor David Laird and others filed a substantially similar lawsuit. Also on February 23, AISLIC advised IMA that the policy was void *ab initio* because IMA had not complied with conditions for coverage that the binder specified.  IMA and the officer defendants notified AISLIC of the lawsuits and requested coverage, which AISLIC denied.  The Superior Court of Fulton County, on February 17, 2006, and the

District Court, on February 27, 2006, in an action brought by the Securities and Exchange Commission, appointed Mr. Perkins as Receiver for IMA and its affiliates. On March 16, 2006, he filed Chapter 11 cases on their behalf, and became the Chapter 11 Trustee in the cases on April 28, 2006. The cases were substantively consolidated, and the Bankruptcy Court confirmed a Chapter 11 plan on August 27, 2008.

The parties here agree that the appointment of Mr. Perkins as Receiver began the process of revealing that the founder of IMA, Kirk Wright, had used IMA and its affiliates to run a "Ponzi" scheme. Mr. Wright was indicted and convicted in District Court for a number of federal offenses. After his conviction, he died of an apparent suicide prior to sentencing while in federal custody. The automatic stay of 11 U.S.C. § 362(a) stayed the prosecution of the lawsuits in the Superior Court. The filing of the Chapter 11 cases required that the plaintiffs in those actions, as well as others similarly situated, pursue their remedies in the bankruptcy cases and file proofs of claim.

After substantively consolidating the Chapter 11 cases, the Bankruptcy Court confirmed the Trustee's Chapter 11 plan. Under the terms of the plan, the plaintiffs in the lawsuits just described and others like them, together with the victims of the Ponzi scheme, became "Investor Tort Claimants." The Plan defines "Investor Tort Claims" as "Claims of Persons who purchased Interests in one or more of the Debtors

for damages arising from the purchase of such Interests." Mr. Perkins became the "Plan Trustee" under the plan, responsible for liquidating assets of the consolidated estates and distributing the proceeds to Investor Tort Claimants.

The Trustee in this action seeks coverage under the Policy for losses for which IMA is liable based on allegedly wrongful investment of investors' money in two funds, known as Platinum II and Emerald II. Some of the investors' money was used in the Ponzi scheme and effectively stolen, but some of it was deposited into an investment account with Lehman Brothers. According to the Trustee, investors gave IMA $11,055,956.35 to invest in the Emerald II Fund, of which $5,175,395.07 was invested in the Lehman Brothers account, and $9,313,164.98 to invest in the Platinum II Fund, of which $6,792,280.36 was invested in the Lehman Brothers account. Of the total investments in these two funds of $20,369,121.33, then, $11,967,675.43 was deposited into the Lehman Brothers account, and $8,401,445.90 was diverted to the Ponzi scheme. The Trustee asserts that the investors in the Emerald II and Platinum II Funds expected that their money would be invested in an actively managed account consisting primarily of common stocks of United States companies. Instead, the funds in the Lehman Brothers account were invested in index options, a highly leveraged and risky investment. Between February and May 2005, losses as a result of the investment in index options resulted in a *de minimis* balance in the Lehman Brothers

account.

The Trustee asserts that the investment of funds in index options was not permitted by the terms of the offering memoranda that investors received and that the investments were made negligently and in breach of contractual and fiduciary duties that IMA owed to the investors. These investors, the Trustee contends, have claims against IMA for their losses that IMA became legally obligated to pay them as the result of negligence, breach of fiduciary duty, and contract. The Trustee seeks coverage under the Policy for amounts that IMA owes to these investors on their claims. The Trustee emphasizes that he does not seek recovery for losses due to IMA's Ponzi scheme.

United States Bankruptcy Court Judge Paul W. Bonapfel reviewed several motions, and issued an Order entitled "Proposed Findings of Fact and Conclusions of Law Pursuant to 28 U.S.C. § 157(c)(1) Regarding Defendant AISLIC's Motions (1) For Summary Judgment [93, 94]; (2) To Exclude the Proposed Expert Testimony of Craig J. McCann [92]; and (3) To Strike Improper Supplemental Declaration [102]." AISLIC filed four motions before the Bankruptcy Court. Two were motions for summary judgment. One motion contended that the Policy is void and of no effect as a matter of law (the "Policy Invalidity Motion"). The other asserted a lack of coverage (the "Coverage Motion"). The other two motions seek to exclude the proposed

testimony of the Trustee's expert, Dr. Craig J. McCann (the "Expert Motion"), and to strike his declaration the Trustee filed in opposition to that motion (the "Expert Declaration Motion"). The Bankruptcy Court proposed that AISLIC was entitled to summary judgment on the grounds that the insurance policy is void due to IMA's material misrepresentations and omissions. The Bankruptcy Court held that summary judgment would not be proper for the other two defenses that the Policy Invalidity Motion asserts, and would not be proper for any of AISLIC's defenses in the Coverage Motion. The Bankruptcy Court proposed that AISLIC's Motion to Exclude Expert's Testimony and Motion to Strike Expert's Declaration be denied. AISLIC requests, and the Bankruptcy Court recommends, that this Court not rule on AISLIC's Motion to Exclude and Motion to Strike until ruling on the Motions for Summary Judgment.

If the Court adopted all of the Bankruptcy Court's proposed findings of fact and conclusions of law, the Court would grant summary judgment for AISLIC, finding that the Policy was void *ab initio*. Both parties object to portions of the Bankruptcy Court's Order. The Trustee objects to the holding that IMA omitted and misrepresented material facts, which constitutes grounds to void the Policy *ab initio*. AISLIC objects to a myriad of other holdings. The Court considers the Trustee's objections first. The Court holds that Dr. Harper's omission was not required to be

knowing and was material, making it grounds to avoid the Policy. The Court also holds that the statement that the IMA funds were "stable" was a material misrepresentation, and also grounds to avoid the Policy. Therefore, the Court holds that AISLIC is entitled to summary judgment. AISLIC's objections to the Bankruptcy Court's Order are moot.

## II. Legal Standards

### A. Review of the Bankruptcy Court's Findings of Fact and Conclusions of Law

This is not a core proceeding within the definition of 28 U.S.C. § 157(c)(1). In non-core proceedings, bankruptcy judges are limited to submitting "proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1). Bankruptcy decisions in non-core proceedings are not subject to Section 158's provisions, and they are due little, if any, deference from the reviewing district courts.

### B. Motion for Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

III. Discussion

The Trustee objects to the Bankruptcy Court's determination that AISLIC is entitled to summary judgment on its argument that the Policy is void *ab initio* because IMA made material misrepresentations and an omission that led to AISLIC insuring IMA under the Policy. The Trustee's objections to this conclusion are discussed below.

A.  Ponzi Scheme Omission

The omitted or concealed fact is that IMA and Wright were operating a Ponzi scheme. Dr. Harper did not reveal this fact when completing the Application, and thus represented that IMA was a legitimate investment advisory business. The parties dispute whether Dr. Harper had knowledge of the Ponzi scheme. Regardless, AISLIC contends that Dr. Harper's knowledge of the Ponzi scheme is immaterial. The Trustee

contends that if Dr. Harper did not have knowledge of the Ponzi scheme, that his failure to state this fact does not void the Policy *ab initio*. The Trustee concedes that misrepresentations can be grounds to void a policy even if made unknowingly, but contends that omissions require knowledge.

> O.C.G.A. § 33-24-7(b) states:
>
> Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:
>
> (1) Fraudulent;
>
> (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
>
> (3) The insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been known to the insurer as required either by the application for the policy or contract or otherwise.

The language of the statute does not reflect the distinction that the Trustee seeks to make between omissions and misrepresentations. Under O.C.G.A. § 33-24-7(b), omissions are not afforded a different status than misrepresentations. Since the passage of O.C.G.A. § 33-24-7(b) in 1982, Georgia courts have not distinguished between misrepresentations and omissions, and have not required the insured to have knowledge of an omission.

The Trustee cites the following cases for the proposition that "the mere failure to state a material fact or the concealment of such fact, when not done willfully and fraudulently, will not void a policy of insurance": German-American Mut. Life Assoc. v. Farley, 102 Ga. 720 (1897); Watertown Fire Ins. Co. v. Grehan, 74 Ga. 642, 656 (1885); Mobile Fire Dept. Ins. Co. v. Miller, 58 Ga. 421, 426 (1877); Phillips v. New York Life Ins. Co., 173 Ga. 135 (1931); Aetna Life Ins. Co. v. Conway, 11 Ga. App. 557 (1912); Empire Life Ins. Co. v. Jones, 14 Ga. App. 647 (1914); Mutual Life Ins. Co. v. Bolton, 22 Ga. App. 566 (1918); Gilham v. Nat'l Life & Accident Ins. Co., 122 S.E.2d 164, 165-66 (Ga. Ct. App. 1961). The cases cited by the Trustee are notable for their dates of decision; only Gilham was decided after 1931. The Trustee's cases accurately state the law of the time, but not the law today. In 1910, Code Section 2481 and Code Section 2483 distinguished between omissions and misrepresentations.[1]

Except for Gilham, the cases cited by the Trustee were decided before the passage of Code Section 56-2409 in 1960. Code Section 56-2409 has almost identical language to O.C.G.A. § 33-24-7(b). Gilham is called into question by Davis v. John

---

[1] Code Section 2481 provided that "[a] failure to state a material fact, if not done fraudulently, does not void; but the willful concealment of such a fact, which would enhance the risk, will void the policy." Code Section 2483 provided that "[w]illful misrepresentation by the assured, or his agent, as to the interest of the assured, or as to other insurance, or as to any other material inquiry made, will void the policy."

Hancock Mut. Life Ins. Co., 202 Ga. App. 3 (1991), and United Family Life Ins. Co. v. Shirley, 242 Ga. 235 (1978). "Because Shirley explicitly stated that no good faith defense exists for 'misrepresentations, omissions, concealment of facts, and incorrect statements,' Davis' argument, citing Fidelity Bankers Life Ins. Co. v. Renew, 121 Ga. App. 883 (1970); Gilham v. National Life & Acc. Ins. Co., 104 Ga. App. 459 (1961), that a good faith defense for omissions is valid in this case is misplaced." Davis, 202 Ga. App. at 5. "In determining whether the application contained misrepresentations, omissions, concealment of facts, or incorrect statements sufficient to prevent a recovery under the policy, it is immaterial whether [the insured] acted in good faith in completing the application." Id., citing United Family Life Ins. Co. v. Shirley, 242 Ga. 235, 238 (1978).

Other recent cases do not distinguish between misrepresentations and omissions. See Pope v. Mercury Indem. Co. of Georgia, 297 Ga. App. 535, 539 (2009), citing White v. American Family Life Assur. Co., 284 Ga. App. 58, 62 (2007) ("O.C.G.A. § 33-24-7(b) does not require that an insurer prove the insured's knowledge of either the materiality or the falsity of the misstatement or omission at issue."); Home Indem Co. Manchester, New Hampshire v. Toombs, 910 F. Supp. 1569, 1574 (N.D. Ga. 1995), quoting Nappier v. Allstate Ins. Co., 766 F. Supp. 1166, 1168 (N.D. Ga. 1991) ("To prevail upon a claim under O.C.G.A. § 33–24–7(b)(2),

plaintiff must prove that (1) a false statement, either a misrepresentation, omission or incorrect statement of facts, was made by the applicant for insurance and (2) the misrepresentation was material because it changed 'the nature, extent, or character of the risk.' With regard to the first element, plaintiff need not prove that Toombs made the statement with intent to deceive or even knowledge of its falsity when making the statement. The statement must be objectively false and the subjective belief of the insured is not the issue.") (internal quotations and citations omitted).

In addition to proving that there was an omission, to prevail upon a claim under O.C.G.A. § 33–24–7(b)(2), AISLIC must also prove that the statement was material because it changed "the nature, extent, or character of the risk." Nappier, 766 F. Supp. at 1168, quoting Oakes v. Blue Cross Blue Shield, 170 Ga. App. 335, 336 (1984). "A material misrepresentation is one that would influence a prudent insurer in deciding whether to assume the risk of providing coverage." Nappier v. Allstate Ins. Co., 961 F.2d 168, 170 (11th Cir. 1992), citing Haugseth v. Cotton States Mut. Ins. Co., 192 Ga. App. 853 (1989). "Ordinarily it is a jury question as to whether a misrepresentation is material, but where the evidence excludes every reasonable inference except that it was material, it is a question of law for the court." Taylor v. Georgia Intern. Life Ins. Co., 207 Ga. App. 341, 342 (1993), citing Miller v. Nationwide Ins., 202 Ga. App. 737, 738 (1992) (internal quotations omitted).

AISLIC has supplied evidence in the form of an affidavit from Susan Murray Winnicki, its underwriter responsible for analyzing risks and determining appropriate premiums for certain risks on behalf of AISLIC. (Winnicki Aff. ¶ 2.) Winnicki states that she did not know that Mr. Wright was conducting a Ponzi scheme when she insured IMA, and that if she had known, she would not have offered IMA insurance on behalf of AISLIC. (Winnicki Aff. ¶¶ 3, 4, 8.) Such evidence, if not controverted, is sufficient to prove that the misrepresentation was material. See Toombs, 910 F. Supp. at 1575-76, citing Nappier, 961 F.2d at 169. The Trustee has not supplied the Court with evidence controverting this statement. Winnicki's affidavit demonstrates that the omission that Mr. Wright was conducting a Ponzi scheme was material because it changed the nature or character of the risk. The omission provides a basis for avoiding the policy under O.C.G.A. § 33-24-7(b)(2).

The omission also provides a basis for avoiding the policy under O.C.G.A. § 33-24-7(b)(3). In order to prevail under O.C.G.A. § 33-24-7(b)(3), AISLIC must prove that IMA made an omission, and that the insurer would not have issued the Policy had it known of the true facts. Nappier, 961 F.2d at 170; Taylor, 207 Ga. App. at 343. The Court has already determined that IMA made an omission when Dr. Harper did not divulge that IMA was conducting a Ponzi scheme. Ms. Winnicki states that she would not have offered IMA insurance on behalf of AISLIC if she had known

of this fact. (Winnicki Aff. ¶ 4.) The Trustee provides no evidence to counter this affidavit. Therefore, the Court grants summary judgment on AISLIC's claim pursuant to both O.C.G.A. § 33-24-7(b)(2) and (b)(3).

The Trustee invokes the general rule that an insurer cannot assert that something is material unless it has either made inquiry about or apprised its prospective insured of the need for proper disclosure of the information in question. See, e.g., Executive Risk Indemnity, Inc. v. AFC Enters., Inc., 510 F. Supp. 2d 1308, 1330 (N.D. Ga. 2007); Georgia Farm Bureau Mut. Ins. Co. v. First Fed. Sav. & Loan Ass'n, 152 Ga. App. 16 (1979); Block v. Voyager Life Ins. Co., 251 Ga. 162 (1983). For example, Georgia Farm Bureau reasoned that an insurer offering fire insurance could not rescind the policy if the insured omitted its non-possession of a smoke or fire detector in the policy application, if the insurer did not ask about a smoke or fire detector. Georgia Farm Bureau, 152 Ga. App. at 18.

The Court declines to extend the reasoning of these cases to require an insurance company to ask whether the insured is conducting a Ponzi scheme. The Court agrees with the Bankruptcy Court that an insurer covering investment management risks has the right to assume that its prospective insured is a legitimate company that is not engaged in a Ponzi scheme. The insurer should not have to ask whether the insured is conducting an illegal enterprise that so obviously increases the

insurer's risk. There could be no doubt from the insured's perspective that the insurer's failure to ask whether the insured was conducting a Ponzi scheme did not indicate that the insurer would not still consider this to be a material fact. Therefore, IMA was still required to divulge this information unsolicited.

      B.    <u>Financial Statement and Stability of Funds Misrepresentations</u>

The alleged misrepresentations at issue occurred on December 22, 2005, when Paul Rauner, then an employee at NASDAQ, sent an email to Ms. Winnicki at AISLIC asking her for a quote. Mr. Rauner attached to the email a Financial Statement for 2004 and advised Ms. Winnicki that Dr. Harper had represented to him that the funds had been "stable since the initial placement last year."

The representation that the funds were "stable" was indeed a material misrepresentation. It was clearly false as the Emerald II and Platinum II Funds went from over $11 million to almost nothing in about four months. A jury could not possibly find that IMA's funds were stable. The misrepresentation was material because AISLIC's underwriter, Ms. Winnicki, stated that if she were aware that the funds were not stable she would not have offered insurance to IMA on behalf of AISLIC. (Winnicki Aff. ¶¶ 5-8.) Ms. Winnicki's affidavit is uncontroverted.

AISLIC did not attach the Financial Statement to the Policy. AISLIC did not incorporate or reference the Financial Statement or Mr. Rauner's representations in

the Policy. The Policy contains a clause which provides, "In consideration of the payment of the premium, and in reliance upon the statements made to [AISLIC] by application forming a part hereof and its attachments and the material incorporated therein, [AISLIC] agrees as follows…" (Compl., at Ex. B.)

The Trustee's argument that because the Financial Statement and Mr. Rauner's statement were not attached to the Policy they were not material misrepresentations "ignores the plain language of O.C.G.A. § 33-24-7(a), which provides that material misrepresentations will bar coverage where they are made either 'in any application for an insurance policy ... *or in negotiations for such*.'" Pope, 297 Ga. App. at 538-39 (emphasis in original). But cf. Capital City Ins. Co. v. Rick Taylor Timber Co., 918 F. Supp. 1558, 1562 (S.D. Ga. 1995), quoting Georgia Int'l Life Ins. Co. v. King, 120 Ga. App. 682 (1969) ("It is clear ... that the paper on which the insurer relies, a copy of which was physically attached to the policy by it, must also be shown to have been intended as a part of the policy, or a part of the application which is also attached to and expressly recited to be a part of the policy, before it may be considered in relation to Code Ann. § 56-2409 as a defense material to the acceptance of the risk or hazard assumed or that the insurer would not have issued the policy if the true facts had been known.") These misrepresentations occurred in conjunction with Mr. Rauner asking

Ms. Winnicki's for an insurance quote; these misrepresentations were a part of the negotiating process.

## IV. Conclusion

For the reasons set forth above, the Court DENIES the Plaintiff's Objection, DENIES AS MOOT the Defendant's Objection, GRANTS the Defendant's Motions for Summary Judgment, and DENIES AS MOOT the Defendant's Motions to Exclude and to Strike.

SO ORDERED, this 11 day of December, 2012.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge